*In re* MENDELSON ESTATE

DETROIT BANK & TRUST COMPANY v ST AUGUSTINE
NATIONAL BANK

1. COURTS—JURISDICTION—WILLS—TRUSTS—PROBATE.

An order of the Wayne County Circuit Court construing the
terms of testamentary trusts established by a will probated in
Oakland County, and reserving in itself the nonexclusive juris-
diction to further instruct the trustees upon their application,
did not affect the concurrent jurisdiction of the Oakland
County courts to approve distributions not in conflict with that
order (MCLA 701.19).

2. TRUSTS—DISBURSEMENTS—DISCRETION OF TRUSTEES.

Disbursement of trust income, accumulated income, or corpus to
a beneficiary on request, if not precluded by the terms of the
instrument creating the trust, may be approved by the trustees
vested with a discretionary power without a special investiga-
tion of the beneficiary's financial circumstances where the
trustees had administered the trusts for many years and were
familiar with the beneficiary's financial condition and needs
without such an investigation.

3. TRUSTS—TRUSTEES—ABUSE OF DISCRETION—DISTRIBUTION OF FUNDS.

The trustees of a multi-million dollar trust fund did not abuse
their discretion by distributing trust income and accumulated
income in reimbursement to the beneficiary of the cost for the
purchase of a $50,000 mausoleum room where the trust instru-
ment authorized by express language the exercise of uncon-
trolled discretion by the trustees in the distribution for the
proper maintenance of the life beneficiary according to her
standard of living to meet any contingency as they saw fit.

4. TRUSTS—DISCRETION OF TRUSTEES—STANDARD OF REASONABLENESS
    —DISTRIBUTION OF FUNDS.

The language of a trust instrument authorizing the trustees to

REFERENCES FOR POINTS IN HEADNOTES
[1] 54 Am Jur, Trusts § 10.
[2] 54 Am Jur, Trusts §§ 288–295.
[3–6] 54 Am Jur, Trusts § 484.

make distributions in their "uncontrolled discretion" is controlling and such words are ordinarily construed as dispensing with the standard of reasonableness on the part of the trustees in administering a trust even when there is a standard by which the reasonableness of the trustees could be judged.

5. Trusts—Trust Corpus—Distribution of Funds—Discretion of Trustees.

A trust corpus may be invaded to reimburse the beneficiary under a multi-million dollar trust for the purchase of a $50,000 mausoleum room where the invasion clause provides "in order to take care of illness, accident, emergency or extraordinary circumstances or in order to provide for [her] necessary support and comfort" and where the amount and occasion for invasion of the trust corpus was vested in the sole discretion of the trustees.

6. Trusts—Discretion of Trustees—Disbursements—Mausoleum.

Authorization of the payment of funeral and burial expenses of a beneficiary by a trustee is a question of interpretation of the trust instrument, and where the trust instrument does not prevent the payment save in the trustees' discretion and the trustees in their discretion have acquiesced in such a disbursement such a distribution is not improper.

Appeal from Oakland, Farrell E. Roberts, J. Submitted Division 2 November 13, 1972, at Lansing. (Docket No. 13401.) Decided January 18, 1973. Leave to appeal granted, 389 Mich 796.

Petition by Detroit Bank & Trust Company and Bernard E. Kuhn, trustees, for permission to distribute trust funds to Gladys M. Dart, life beneficiary of a trust created by Aaron Mendelson. The probate court granted the petition. St. Augustine National Bank and Donald E. Buck, defendants, guardians of remainder-beneficiaries, appealed to the circuit court. Affirmed. Defendants appeal. Affirmed.

*Bodman, Longley, Bogle, Armstrong & Dahling* (by *Walter O. Koch),* for plaintiffs.

*Butzel, Levin, Winston & Quint* (by *Henry H. Sills),* for defendants.

Before: QUINN, P. J., and J. H. GILLIS and T. M. BURNS, JJ.

T. M. BURNS, J. This appeal centers on the legality of a court-approved transfer of trust income and corpus to a life beneficiary for the purchase of a mausoleum room.

Although the facts which led up to the present controversy are somewhat complex, they are not materially in dispute.

The will of Aaron Mendelson, admitted to probate in Oakland County on September 29, 1933, established two testamentary trusts among others. One trust under Paragraph 20 (hereinafter referred to as the first Mendelson trust) provided that the trust income would be payable to the settlor's daughter, Mrs. Gladys Dart.[1] The terms of the other trust created by Paragraph 23B (hereinafter referred to as the second Mendelson trust) were residuary in nature and directed that 5% of the trust income be paid to Mrs. Dart during her lifetime. In addition, the trustees were vested with a discretionary power to make additional distributions out of the income to Mrs. Dart.

Subsequently, Bernard Kuhn and Mrs. Dart (then Mrs. Kuhn) created separate inter vivos trusts (hereinafter denominated the Kuhn trusts). Each Kuhn trust designated Mrs. Dart as the life beneficiary of the trusts' income.[2]

It is also significant to note that the first and second Mendelson trusts and the Kuhn trusts contained corpus invasion clauses.

On March 12, 1969, Mrs. Dart entered into an agreement to purchase a mausoleum room at a cost of $50,000. She paid the purchase price. By a

[1] The daughter was married to Bernard Kuhn, now deceased, and is presently married to Harry Dart.

[2] In 1960 the corpus of the several trusts aggregated $14,000,000 more or less. Mrs. Dart's income after taxes was approximately $340,000 in 1968 and $375,000 in 1969.

letter to the trustees of the second Mendelson trust, dated June 3, 1970, Mrs. Dart asked to be reimbursed the cost of the mausoleum room plus the amount of taxes which would be payable by her as a consequence of the repayment.

Pursuant to Mrs. Dart's request, the trustees filed a petition[3] with the Oakland County Probate Court setting forth their intention to make the requested distribution out of the current income, accumulated income, or corpus of the second Mendelson trust.

The Oakland County Probate Court granted the trustees' petition over the objections of the appellants. On appeal, the Oakland County Circuit Court affirmed the probate court's determination. The propriety of the probate and circuit court's decisions are now brought here for review.

As the first assignment of error, the appellants argue that the failure of the Oakland County Circuit Court to refer the trustees' instant petition to the Wayne County Circuit Court violated the rules of comity and constituted an abuse of judicial discretion inasmuch as a 1960 Wayne County Circuit Court decree construing the terms of the second Mendelson trust purported to speak to the trustees' petition. This argument is untenable.

Prior to 1960, a dispute arose between the several trustees of the Mendelson and Kuhn trusts and the various remaindermen regarding a distribution of trust corpus to the life beneficiary, Gladys Dart. The cause was heard in Wayne County Circuit Court and by an opinion and order dated March 28, 1960, the court ruled pertaining to the second Mendelson trust:

"20. That in recognition of the high income tax rates

---

[3] The petition was later amended.

applicable to income received by the life beneficiary, and the balance which she is able to retain after payment of such taxes, provision should be made for distribution to her of a fixed amount annually from the current income of the 23 'B' Trust, over and above the 5% therein provided, subject to the conditions hereinafter stated.

"21. That in order to carry out the purposes of the respective trusts and to assure the proper administration thereof in accordance with their respective purposes and terms, the Settlor and the remaindermen should in the future have notice and an opportunity to be heard before any action is taken by The Detroit Bank and Trust Company and Harry L. Winston, respectively Trustees under Trusts 11245 and 11246 (Kuhn trusts) or Harry L. Winston, Trustee under the Testamentary Trusts created by Paragraphs 20 and 23 'B' (first and second Mendelson trusts) respectively, of the said will of Aaron Mendelson, deceased, or any successor trustee in regard to any of the following matters:

"(a) distributing any portion of the corpus of Trusts 11245, Paragraph 20 or Paragraph 23 'B'; (Kuhn and first and second Mendelson trusts)

"(b) distributing any part of the presently accumulated income under Testamentary Trust 23 'B' (second Mendelson trust) or of such part of the net annual income hereafter to be derived from said Trust as exceeds 5% thereof; provided, however, that upon presentation to the Testamentary Trustee of evidence satisfactory to said Trustee that all current and delinquent Federal income taxes and deficiencies of the life beneficiary have been paid or adequately provided for, that shall be distributed to the life beneficiary, out of the net annual income from said 23 'B' trust (second Mendelson trust) during her lifetime and without notice and hearing, an additional sum equivalent to 32-1/2% thereof, per annum;

"(c) disposing of any General Motors Corporation stock now comprising any part of the corpus of any such trusts or of Trust 11246 (first and second Mendelson trust and Kuhn Trust)"

After making these findings, the court ordered:

"C. *The Court hereby instructs and directs the Trustees that the Settlor and remaindermen hereafter shall be given notice and have an opportunity to be heard before a court of competent jurisdiction before any action is taken* by the Trustees in the future in regard to any of the following matters (emphasis supplied):

"1. distributing any portion of the *corpus* of Trusts 11245, Paragraph 20 or Paragraph 23 'B'; (Kuhn and first and second Mendelson trusts)

"2. distributing any part of the presently accumulated income under Testamentary Trust 23 'B' (second Mendelson trust) or of such part of the net annual income hereafter to be derived from said trust as exceeds 5% thereof; provided, however, that upon presentation to the Testamentary Trustee of evidence satisfactory to said Trustee that all current and delinquent Federal income taxes and deficiencies of the life beneficiary have been paid or adequately provided for, there shall be distributed to the life beneficiary, during her lifetime and without notice and hearing, out of the net annual income from said 23 'B' Trust (second Mendelson trust) commencing with the calendar year 1960, an additional sum equivalent to 32-1/2% thereof, per annum. 'Net income' for the purposes hereof shall be deemed to be the gross income of the 23 'B' Trust (second Mendelson trust) less ordinary expenses of administration and taxes, other than Federal income taxes upon such income. Capital gains and taxes thereon shall not be taken into account in the computation of net income. *Upon notice and opportunity to be heard, the provisions and standards contained in Paragraph 23 'B'* (second Mendelson trust) *of said will shall govern as to any distributions of income, current or accumulated, to the life beneficiary, over and above those herein provided for.* (Emphasis supplied.)

"3. disposing of any General Motors Corporation stock which now comprises any part of the corpus of such trusts.

"*The Court reserves nonexclusive jurisdiction in this proceeding to instruct the trustees in regard to any*

*such matters at any time or from time to time upon application for such instructions and upon such notice as the Court shall direct."* (Emphasis supplied.)

It is conceded that the Wayne and Oakland County Circuit Courts have concurrent jurisdiction to approve the distribution sought by the trustees.[4] MCLA 701.19; MSA 27.3178(19).

Essentially the appellants' allegation of error is based on the premise that the action of the Oakland County Circuit Court approving the petition for a distribution to reimburse the life beneficiary the cost of a mausoleum room frustrates and contradicts the intent of the Wayne County Circuit Court decree of 1960. We cannot agree.

The Wayne County Circuit Court did not reserve exclusive jurisdiction over the future administration of the second Mendelson trust. Beyond that, the italicized portions of the decree indicate that before the approval or rejection of any further petitions for the distribution of trust income, accumulated income, or corpus in accordance with the terms of the second Mendelson trust, the interested parties were to be given notice and an opportunity to be heard on the matter.

In the case at hand, all of the interested parties were given proper notice and an opportunity to be heard concerning the trustees' petition. Moreover, the probate and circuit courts of Oakland County looked to the terms of the second Mendelson trust and found that the trust provisions permitted the distribution in question.

---

[4] The will creating the second Mendelson trust was probated in Oakland County Circuit Court in 1933. Some of the trustees are residents of Wayne County. MCLA 701.19(6); MSA 27.3178(19)(6) states in pertinent part: "The jurisdiction conferred by this section [jurisdiction of probate courts] shall not be construed to deprive the circuit court in chancery in the proper county of concurrent jurisdiction as originally exercised in the same matter".

It is readily apparent from the foregoing that the action taken by the Oakland County Probate and Circuit Courts in approving the distribution of trust income and corpus to reimburse the life beneficiary the cost of a mausoleum room was not in conflict with the 1960 decree of the Wayne County Circuit Court. Therefore, the appellants have failed to sustain their contention.

Next it is the appellants' position that the trustees failed in their fiduciary duty to investigate the life beneficiary's request for the disbursement of trust income and corpus. This assertion is without merit.

In the amended petition seeking court approval of the disbursement here in question, the trustees admit that they did not undertake a special investigation of the life beneficiary's financial circumstances. However, they aver that this failure was attributable to the fact that they had administered trusts on behalf of the life beneficiary for many years and that for the last ten years they had disbursed funds for the payment of the life beneficiary's federal income taxes. The trustees further state that they knew the life beneficiary's general income and financial circumstances and were aware that aside from the distribution requested, the life beneficiary possessed sufficient funds independent of the trust income or corpus to acquire the mausoleum room without unduly affecting her financial status or causing a reduction of her standard of living. Under these circumstances, we are persuaded that any further inquiry on the part of the trustees would have been an idle act.

Absent a contrary provision in an instrument creating a trust, we hold that where a beneficiary tenders a request for disbursement of trust income, accumulated income or corpus, and where

the testamentary or inter vivos trustees are cognizant of the beneficiary's financial condition and standard of living, the trustees need not undertake any other investigation of the beneficiary before deciding whether or not to honor the beneficiary's request.

As the next assignment of error, the appellants complain that in light of the pertinent language found in the second Mendelson trust, the trustees abused their discretion by reimbursing the life beneficiary for the cost of a mausoleum room out of the trust income or corpus. Again we are constrained to disagree.

For the sake of clarity the questions of the trustees' abuse of discretion, the distribution of trust income, and the distribution of trust corpus will be treated separately.

Did the trustees abuse their discretion by allocating trust income and accumulated income to the life beneficiary? The Restatement of Trusts states:[5]

"The Settlor may * * * manifest an intention that the trustee's judgment need not be exercised reasonably, even where there is a standard by which the reasonableness of the trustee's conduct can be judged. This may be indicated by a provision in the trust instrument that the trustee shall have 'absolute' or 'unlimited' or *'uncontrolled' discretion.* These words are not interpreted literally but are ordinarily construed as merely dispensing with the standard of reasonableness. In such a case the mere fact that the trustee has acted beyond the bounds of a reasonable judgment is not a sufficient ground for interposition by the court, so long as the trustee acts in a state of mind in which it was contemplated by the Settlor that he would act." (Emphasis supplied.)

---

[5] 1 Restatement of Trusts, 2d, § 187, pp 408–409, Comment J.

It is elemental law that the express language of a trust instrument is controlling. The second Mendelson trust authorized the trustees to distribute the trust income, accumulated income, to the life beneficiary as they saw fit and in their "uncontrolled discretion". The funds were to be disbursed for the "proper maintenance of the life beneficiary according to her standard of living, or in order to meet any other contingency, or for any other reason". We conclude from the clear import of this language coupled with the position taken in the Restatement of Trusts, *supra,* that the trustees did not abuse their discretion by transferring trust income or accumulated income to reimburse the life beneficiary the cost of a mausoleum room.

Did the trustees abuse their discretion by disbursing trust corpus to the life beneficiary for the purpose in question? The second Mendelson trust contained a corpus invasion clause which empowered the trustees to distribute trust corpus to the life beneficiary "in order to take care of illness, accident, emergency or extra ordinary circumstances or in order to provide for [her] necessary support and comfort * * * ". In addition, the amount and occasion for invasion of the trust corpus was vested in the sole discretion of the trustees.

The trustees averred in their petition to the Oakland County Probate Court that the purchase of a mausoleum room was an extraordinary circumstance which justified distribution of trust corpus to the life beneficiary. Admittedly the determination of whether the acquisition of a mausoleum room constitutes an extraordinary circumstance is difficult at best. Reasonable minds could differ. It is, however, apparent that the settlor Aaron Mendelson intended that decision to rest within the

sole discretion of the trustees. The trustees have exercised that discretion in a reasonable manner. Therefore, the substitution of our judgment for that of the trustees is not warranted. *In re Zuckermandel's Estate,* 311 Mich 220 (1945).

Finally, the appellants contend that it is impermissible to distribute trust income or corpus to a life beneficiary for the payment of funeral and burial expenses.

The Restatement of Trusts, however, reads that: "It is a question of interpretation whether the trustee is authorized to pay funeral and burial expenses of the beneficiary".[6] Therefore, once again the language of the trust is dispositive. After a close reading of the trust instrument, we find nothing therein, save the trustees' discretion, which would prevent the payment of trust income or corpus to the life beneficiary for the purchase of the mausoleum room. The trustees in their discretion acquiesced to such a disbursement. Accordingly, we find no error.

For the reasons delineated above, the decision of the Oakland County Circuit Court and Probate Court permitting distribution out of the income and corpus of the second Mendelson trust to the life beneficiary for the purchase of a mausoleum room is affirmed.

All concurred.

---

[6] 1 Restatement of Trusts, 2d, § 128, p 278, Comment E.